WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALVIN C. PAYNE,                         )
                                        )
                  Plaintiff,            )
                                        )
     vs.                                )
                                        )
ANDREW M. SAUL, Commissioner of Social  )
Security Administration,                )
                                        )     No. 3:19-cv-0266-HRH
                  Defendant.            )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Alvin C. Payne has timely filed his opening brief[1] to which defendant, Andrew M. Saul, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On February 21, 2017, plaintiff filed applications for disability benefits under Title II and Title XVI, alleging that he became disabled on December 24, 2014.[3] Plaintiff alleges

---

[1]Docket No. 14.

[2]Docket No. 16.

[3]Plaintiff previously applied for benefits, alleging that he was disabled between January 14, 2002 and April 14, 2005. These applications were denied by an ALJ on July 21,
(continued...)

-1-

that he is disabled due to PTSD, bipolar disorder, social anxiety, and ADHD. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested a hearing. After an administrative hearing on June 5, 2018, an administrative law judge (ALJ) denied plaintiff's applications. Plaintiff sought review of the ALJ's unfavorable decision. On September 13, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 11, 2018 decision the final decision of the Commissioner. On October 8, 2019, plaintiff commenced this action in which he asks the court to review the Commissioner's final decision.

General Background

Plaintiff was born on November 1, 1977. Plaintiff was 37 years old on his alleged disability onset date. Plaintiff has a high school education. Plaintiff's past relevant work included working as a truck driver and a material handler.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2016."[4]

---

[3](...continued)
2007. Admin. Rec. at 146-154. Plaintiff also applied for benefits on December 29, 2011, alleging disability as of June 30, 2011. This application was denied by the ALJ on February 15, 2013. Admin. Rec. at 158-169. The Appeals Council remanded the matter to the ALJ, but on December 23, 2014, the ALJ again denied plaintiff's application. Admin. Rec. at 200-211.

[4]Admin. Rec. at 28.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since December 24, 2014, the alleged onset date. . . ."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine, residuals from back surgery, obesity, major depressive disorder, general anxiety disorder, attention deficit hyperactivity disorder

---

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 28.

(ADHD), and substance use disorder. . . ."[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[8] The ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders).[9] The ALJ considered the "paragraph B" criteria and found that plaintiff had "moderate limitation in his ability to interact with others[,]" "moderate limitation in his ability to understand, remember and apply information, concentrate, persist, or maintain pace[,]" and "mild limitation in his ability to adapt or manage oneself."[10] The ALJ found that the "paragraph C" criteria had not been met.[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except [as] follows[:]

---

[7]Admin. Rec. at 28.

[8]Admin. Rec. at 28.

[9]Admin. Rec. at 29.

[10]Admin. Rec. at 29-30.

[11]Admin. Rec. at 30.

> He is further limited to standing/walking for up to 2-3 hours, and sitting for up to six hours during an eight-hour workday; frequent climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to non-weather related extreme cold and extreme heat; avoiding moderate exposure to excessive vibrations and hazardous machinery; avoiding all exposure to unprotected heights; and work would be limited to that which would accommodate a sit/stand option allowing the claimant to alternate between sitting and standing positions at one-hour intervals for 5-10 minutes to relieve pain and discomfort. He has sufficient concentration, persistence or pace for simple repetitive tasks in 2-hour increments with usual and customary breaks. He should not work with the general public. He can work in the same room with co-workers but no coordination of work activity. He can adapt to simple work-place[] changes as may be required for simple repetitive work.[12]

The ALJ found plaintiff's pain and symptom statements less than credible because they were inconsistent with the medical evidence, he failed to follow treatment recommendations, he had no side effects from his medications, he had no criminal history despite his allegations of uncontrolled angry outbursts, he was able to frequently travel from Anchorage to Seattle, and he was able to care for his young daughter without help for several months.[13]

The ALJ gave minimum weight[14] to ANP Shawna Wilson's opinions.[15] The ALJ

---

[12]Admin. Rec. at 31.

[13]Admin. Rec. at 35-36.

[14]Admin. Rec. at 37.

[15]ANP Wilson managed plaintiff's pain at the Alaska Spine Institute. On December 15, 2015, November 10, 2016, and October 17, 2017, ANP Wilson opined that plaintiff could
(continued...)

gave some weight[16] to Dr. Brown's opinion.[17]  The ALJ gave minimum weight to Dr. Cherry's opinion.[18]  The ALJ gave great weight[19] to Dr. Gonzales' opinion.[20]  The ALJ

---

[15](...continued)
not work either full-time or part-time and that he could not participate in activities in a classroom-like setting.  Admin. Rec. at 437, 465, 570.

[16]Admin. Rec. at 37.

[17]On May 31, 2017, Roy C. Brown, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 5 hours; sit for 6 hours; was unlimited as to pushing/pulling; could frequently climb ramps/stairs; could never climb ladders/ropes/scaffolds; was unlimited as to balancing; could occasionally stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, heat, vibration, and hazards.  Admin. Rec. at 232-234.

[18]Admin. Rec. at 38.  Dr. Cherry's opinion is discussed below in detail.

[19]Admin. Rec. at 38.

[20]On June 3, 2017, Frank Gonzales, Ph.D., opined that plaintiff was not significantly limited in his ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basis standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation; and was moderately limited in his ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or makes plans independently of others.  Admin. Rec. at 235-236.  Dr. Gonzales further opined that plaintiff "is able to understand and remember instructions and work procedures for simple
(continued...)

considered the lay testimony of Michael Gillespie [21] and Johnathan Ela[22] but gave this testimony little weight.[23]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[24]

At step five, the ALJ found that "there were jobs that exist in significant numbers in the national economy that the claimant can perform. . . ."[25] The ALJ found that plaintiff could work as a final assembler, a document preparer, and a touch up screener.[26]

---

[20](...continued) repetitive/routine tasks[,]" "[c]an sustain CPP for SRTs for 1-2 hour increments throughout the workday/workweek, with normal and customary work breaks[,]" "can manage supervision delivered in a normative manner and limited interaction with coworkers [but] [r]ecommend no public contact d/t ct's own reports of 'rage' reactions[,]" "[c]an adapt to changes in the workplace with advance notice and clearly articulated expectations, and can work on goals set by others." Admin. Rec. at 235-236. Dr. Gonzales also opined that plaintiff had mild limitations as to understanding, remembering or applying information; moderate limitations as to interacting with others; moderate limitations as to concentration, persistence, or maintaining pace; and mild limitations as to adapting or managing oneself. Admin. Rec. at 247.

[21]Gillespie, a friend of plaintiff's, completed a third-party function report on May 3, 2017. Admin. Rec. 361-369.

[22]Ela was a friend of plaintiff's who completed a third-party function report. Admin. Rec. at 392-400.

[23]Admin. Rec. at 38.

[24]Admin. Rec. at 39.

[25]Admin. Rec. at 39.

[26]Admin. Rec. at 40. This finding was based on the testimony of the vocational expert, Steve Duschene. Admin. Rec. at 74.

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from December 24, 2014, through the date of this decision. . . ."[27]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[27]Admin. Rec. at 40.

Discussion

Plaintiff argues that the ALJ erred in discounting Dr. Cherry's opinion. Dr. Cherry did a psychoneurological evaluation of plaintiff on August 15, 2016.[28] Dr. Cherry noted that

> [t]he current neuropsychological test findings are considered to be of somewhat limited validity due to the patient failing one internal validity check indicating invalid performance, as well as due to his consistent pattern of evidencing implausibly low scores on tests of memory that were contradicted by his intact memory abilities evidenced during the interview, which appears best explained by his appearing overwhelmed with anxiety, frustration, and to a lesser degree, chronic sleep disturbance and/or some sedating medications. The patient was a hard worker and applied himself throughout the testing, but was noted to complain throughout the majority of testing. . . .
> The current intellectual test findings, if accepted as valid, would indicate a pattern of borderline range general intellectual functioning, low average range verbal abilities, yet borderline range perceptual organizational abilities, although the patient's obtained IQ scores were artificially reduced due to a few implausibly low and technically invalid performances, with the patient's actual intellectual abilities likely in the average range.[29]

Based on his evaluation, Dr. Cherry opined that plaintiff "clearly is not capable of full-time competitive employment."[30]

---

[28]Admin. Rec. at 449.

[29]Admin. Rec. at 458.

[30]Admin. Rec. at 461.

The ALJ gave minimal weight to Dr. Cherry's opinion.[31] While an ALJ is "not bound by an expert medical opinion on the ultimate question of disability," if the ALJ rejects an expert medical opinion's ultimate finding on disability, "she must provide 'specific and legitimate' reasons for rejecting the opinion. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). Thus, the ALJ was required to provide specific and legitimate reasons for giving Dr. Cherry's opinion only minimal weight.

The ALJ gave "minimal weight" to Dr. Cherry's opinion

> because Dr. Cherry himself stated that the testing findings are considered to be of "somewhat limited validity due to the patient failing one internal validity check indicating invalid performance as well as due to his consistent pattern of evidencing implausibly low scores on tests . . . that were contradicted by his intact memory abilities evidenced during the interview. . . ."[32]

In discounting Dr. Cherry's opinion, the ALJ "cherry-picked" one negative aspect of Dr. Cherry's report while ignoring the parts of Dr. Cherry's report and opinion which supported disability. ALJs "cannot cherry-pick evidence to support their findings." Lannon v. Comm'r of Social Sec. Admin., 234 F. Supp. 3d 951, 960 (D. Ariz. 2017) (citation omitted). But that is what the ALJ did here. The ALJ focused on Dr. Cherry's statement that the test findings were of "somewhat limited validity" but failed to even mention that Dr. Cherry had opined that plaintiff was incapable of competitive employment. In fact, the ALJ

---

[31]Admin. Rec. at 38.

[32]Admin. Rec. at 38.

referred to Exhibit B8F as being Dr. Cherry's "opinion."[33] Exhibit B8F is not Dr. Cherry's opinion, but rather is plaintiff's October 5, 2017 lumbar imaging.[34]

The ALJ also ignored Dr. Cherry's explanation of the limited validity of plaintiff's neuropsychological testing. Dr. Cherry explained that plaintiff's "implausibly low" scores on some of the testing "appear[] best explained by his appearing overwhelmed with anxiety, frustration, and to a lesser degree, chronic sleep disturbance and/or some sedating medications."[35] Dr. Cherry also explained that "[t]he current psychological test findings were generally valid, although he [plaintiff] invalidated one measure of implausible cognitive/neurological symptoms, which reflects a 'cry for help' and some likely somatic health issues, at a minimum."[36] And, Dr. Cherry stated that "the only consistent thing on neuropsychological testing was [plaintiff's] consistent pattern of attentional deficits on all measures, yet his profile on attentional testing was somewhat atypical of ADHD, which would suggest that many of his attentional problems instead stem from varied severe anxiety, chronic sleep disturbance, and/or mood disorder."[37] Dr. Cherry did not conclude that because plaintiff failed one internal validity check and had "implausibly low" scores on certain tests

---

[33]Admin. Rec. at 38.

[34]Admin. Rec. at 568-569.

[35]Admin. Rec. at 458.

[36]Admin. Rec. at 459.

[37]Admin. Rec. at 460.

-11-

meant that plaintiff's neuropsychological testing was completely invalid, as the ALJ suggests. Rather, Dr. Cherry provided an explanation for plaintiff's performance. Presumably, the neuropsychological testing, which included validity checks, is designed to give the examiner a complete picture of the claimant and allow the examiner to factor in all test results in reaching conclusions and making recommendations.

The ALJ appears to have misunderstood the basis for Dr. Cherry's opinon. Dr. Cherry opined that, even in light of the limited validity of the test results, plaintiff was not capable of competitive employment due to his mental impairments. In formulating his opinion, Dr. Cherry considered that plaintiff had failed one validity check and had "implausibly low" scores on certain tests. Thus, discounting Dr. Cherry's opinion because of his statement about the limited validity of plaintiff's test results was not legitimate.

Because the ALJ erred as to Dr. Cherry's opinion, the court must determine whether to remand this matter for further proceedings or for an award of benefits, as plaintiff requests. The court follows a three-step analysis to determine whether such a remand is appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the

improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021).  But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"  Id. (quoting Garrison, 759 F.3d at 1021).

Here, further administrative proceedings would serve no useful purpose.  Dr. Cherry has opined that plaintiff's mental impairments preclude him from engaging in competitive employment.  Plaintiff would be disabled if Dr. Cherry's opinion were credited as true.

## Conclusion

Based of the foregoing, the final decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 9th day of April, 2020.

/s/ H. Russel Holland
United States District Judge